ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MAITE A. RIVERA FONSECA PERSONA CUSTODIA- Recurrida<br><br>v.<br><br>JAMES SANTIAGO RODRÍGUEZ PERSONA NO CUSTODIA- Recurrente | KLRA202300522 | Revisión Judicial procedente del Tribunal Administrativo de ASUME, Región Arecibo<br><br>Caso Núm. 0502524<br><br>Sobre: REVISIÓN ADMINISTRATIVA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez, y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de marzo de 2024.

Comparece el demandado recurrente, James Santiago Rodríguez (en adelante, ¨recurrente¨ o ¨señor Santiago) mediante recurso de revisión judicial administrativa. Mediante el presente recurso solicita la revisión de una *Resolución* sobre modificación de pensión alimentaria emitida por el Juez Administrativo de la Administración para el Sustento de Menores, Región de Arecibo (en adelante, ¨ASUME¨) emitida el 15 de agosto de 2023 y notificada el 17 de agosto de 2023. En el referido dictamen, ASUME declaró Ha Lugar una solicitud de modificación de pensión alimentaria solicitada por Maite A. Rivera Fonseca (en adelante, ¨recurrida¨ o ¨señora Rivera¨).

Por las razones que expondremos a continuación, se *confirma* el dictamen recurrido.

1

# I.

El señor James Santiago y la señora Riversa procrearon una hija, CSR, durante una relación consensual. El 8 de septiembre de 2021, ASUME dictó una *Resolución* en rebeldía en la cual le impuso al señor Santiago el pago de una pensión alimentaria de $483.52 a favor de CSR. La pensión se determinó imputándole al señor Santiago un salario mínimo de $7.25 por hora.

El 25 de octubre de 2021, el recurrente presentó ante el Tribunal Administrativo de ASUME, Región de Arecibo, una solicitud de prorrateo de sus obligaciones alimentarias para conservar su reserva de ingresos, alegando estar desempleado.

Durante el transcurso de los procedimientos, la señora Rivera advino en conocimiento de que el señor Santiago había incorporado y registrado la corporación CGY, Corp. (¨CGY¨).

Ante posibles cambios sustanciales en los ingresos del señor Santiago, el 17 de mayo de 2022, la señora Rivera le solicitó a ASUME la modificación de la pensión alimentaria previo al prorrateo. La recurrida alegó la existencia de nueva información en los ingresos del señor Santiago, en comparación con el mínimo federal imputado en septiembre de 2021.

El 11 de julio de 2022, tras la celebración de la primera vista de modificación de pensión en el caso de autos, ASUME emitió una *Orden* en la que expresó que la prueba presentada por la recurrida para evidenciar el cambio en los ingresos del señor Santiago no era pertinente por ser anterior a septiembre de 2021, fecha en la que se ordenó la pensión alimentaria. A su vez, le concedió treinta (30) días a la señora Rivera para demostrar que entre septiembre de 2021 y julio de 2022 existían los alegados cambios en los ingresos del señor Santiago. Respecto a la corporación CGY, el foro administrativo determinó que: (1) no era parte del pleito; (2) era una entidad jurídica con personalidad propia e independiente de sus accionistas, directores

y oficiales, y; (3) no se presentó prueba suficiente para descorrer el velo corporativo.

Como parte del descubrimiento de prueba, el 13 de julio de 2022, mediante correo electrónico, la recurrida le solicitó al foro administrativo que emitiera, en lo pertinente, las siguientes órdenes:

1) Orden dirigida al Departamento de Hacienda ("Hacienda") para que provea copia de las planillas contributivas del señor Santiago y las de CGY para los años 2020 y 2021;

2) Orden dirigida al Departamento de Obras Públicas ("DTOP") para que provea los vehículos y traspasos a nombre del señor Santiago y CGY para los años 2021 y 2022;

3) Orden dirigida al Departamento del Trabajo ("DTRH") para que provea Certificación del Departamento del Trabajo del señor Santiago para los años 2021 y 2022 y el registro corporativo de CGY para los años 2021 y 2022;

4) Orden dirigida al Fondo del Seguro del Estado ("CFSE") para que provea información sobre el recurrente y CGY para los años 2021 y 2022;

5) Orden dirigida a la compañía Pura Energía para que provean una Certificación de Empleo del señor Santiago y una certificación de empleo de contratación de CGY para los años 2021 y 2022;

6) Orden dirigida al señor Santiago para que provea sus estados bancarios y los estados bancarios de CGY para los años 2021 y 2022.

El 14 de julio de 2022, el recurrente se opuso a la expedición de las órdenes respecto a la información referente a CGY. Argumentó que el foro administrativo ya había resuelto que la corporación no formaba parte del pleito y que era un ente jurídico con personalidad independiente a la del señor Santiago.

Atendida la solicitud de la señora Rivera, el 20 de julio de 2022, ASUME emitió una *Orden* mediante la cual declaró No Ha Lugar las órdenes dirigidas a Hacienda, DTOP, DTRH, CFSE y Pura Energía referente a CGY porque la recurrida no proveyó el número de seguro social patronal de la corporación. De igual manera, declaró No Ha Lugar la orden dirigida a que el recurrente proveyera los estados de cuentas de CGY. La Jueza Administrativa nuevamente determinó que

¨la corporación es un ente separado a sus oficiales, accionistas y directivos¨.

Así las cosas, el 21 de julio de 2022, la recurrida expresó la necesidad de obtener los estados de cuenta bancaria de CGY para demostrar que el recurrente utiliza la corporación para pagar sus gastos personales. Además, proveyó el número de seguridad patronal de CGY para que ASUME expidiera las correspondientes órdenes.

A solicitud de la señora Rivera, el 5 de agosto de 2022, la Jueza Administrativa le ordenó al Departamento de Hacienda a proveer copia de las Planillas de Contribución sobre ingresos radicadas para los años contributivos 2020 y 2021 de la corporación CGY.

El 15 de agosto de 2022, la señora Santiago volvió a solicitar que se ordenara la presentación de los estados de cuenta de CGY a lo que ASUME declaró No Ha Lugar mediante *Orden* de 17 de agosto de 2022. Resolvió que la petición era tardía y que concederla extendería el término de treinta (30) días concedido el 11 de julio de 2022 para demostrar la existencia de cambios en los ingresos del señor Santiago.

En reconsideración, el 18 de agosto de 2022, la señora Rivera solicitó nuevamente la entrega de los estados de cuenta para lograr evidenciar los ingresos del señor Santiago.

El 22 de agosto de 2022, el señor Santiago solicitó que, vencido el término otorgado el 11 de julio de 2022, se continuara el procedimiento de prorrateo de sus obligaciones alimentarias.

Ante las reiteradas solicitudes de la señora Rivera, el 26 de agosto de 2022, se dictaminó una *Orden* en donde el foro administrativo acogió la solicitud de la señora Rivera y les ordenó a las correspondientes instituciones bancarias la entrega de los estados de cuenta de CGY. Por otra parte, extendió hasta el 30 de septiembre de 2022 el término concedido a la recurrida para presentar la prueba pertinente a los cambios de ingreso del recurrente.

El 8 de septiembre de 2022, First Bank presentó una *Moción Informativa sobre Orden* e informó que, en aras de proteger la confidencialidad de la información financiera de sus clientes, le solicitó a CGY que les proveyera autorización para cumplir con la Orden de la agencia, lo cual denegaron. Así las cosas, First Bank señaló que estaba imposibilitado de cumplir con la producción de la información ordenada.

Mediante correo electrónico enviado el 13 de septiembre de 2022, la señora Rivera solicitó el emplazamiento de CGY.

Posteriormente, el señor Santiago y la Procuradora Auxiliar de ASUME se opusieron a que el Tribunal ordenara a First Bank la entrega de la información solicitada por entender que las corporaciones son personas jurídicas separadas de sus accionistas y directores.

No obstante, el 4 de octubre de 2022, la Jueza Administrativa le ordenó a First Bank a cumplir con lo ordenado. La *Orden* dispuso:

> ¨[…] Tomando en cuenta que el presidente de CGY Corp. es James Santiago Rodríguez, persona no custodia, y que la persona custodia realiza el descubrimiento de prueba para en su momento demostrar que procede descorre[r] el velo corporativo, se **ordena:**
>
> - First Bank tiene 10 días para cumplir con la orden de 26 de agosto de 2022.

Mediante *Orden* emitida el mismo día, ASUME citó la comparecencia de CGY a la vista calendarizada para el 2 de noviembre de 2022.

El 26 de septiembre de 2022, la señora Rivera presentó su Planilla de Información Personal y Económica (PIPE) en la que declaró un salario bruto de $0.00 y estar recibiendo pagos mensuales de la Corporación del Fondo del Seguro del Estado (CFSE) de $150 por incapacidad parcial permanente desde el 8 de febrero de 2022.

Por su parte, el señor Santiago presentó su PIPE el 27 de diciembre de 2022 en la que declaró un salario bruto de $0.00, no tener ingresos y que, un familiar le estaba prestando dinero.

Luego de varios trámites que no son necesarios pormenorizar para poder disponer del caso y la celebración de múltiples vistas, ASUME emitió el 15 de agosto de 2023 y notificada el 17 de agosto de 2023 una *Resolución y Orden*. Como parte de la prueba presentada, fueron admitidos los testimonios de las partes y de la presidenta de CGY, Yajaira Santiago.

En lo pertinente a la señora Rivera, la Juez Administrativa realizó las siguientes determinaciones de hechos:

[...] 6. La PC es soltera, tiene otro hijo menor de edad y estudiante universitario que se hospeda y regresa al hogar materno, es empleada del Departamento de Educación, ocupa un puesto de enfermera escolar, se encuentra en licencia sin sueldo, está acogida a los servicios de la Corporación del Fondo del Seguro del Estado (CFSE) en descanso y tiene ingresos de: $150 mensual de la CFSE por incapacidad parcial permanente desde el 8 de febrero de 2022, beneficios el Programa de Asistencia Nutricional (PAN) y ayuda económica de familiares.

7. El ingreso de la PC en el Departamento de Educación es de $2,816.00 bruto mensual y en el 2022 recibió un ingreso bruto de $30,622.5 a 2 de diciembre de 2022 ($2,551.89 mensual bruto), según talonario.

8. En la PIPE de 7 de diciembre de 2022 la PC enumeró gastos que suman $2,727 mensual aproximado. [...]

En cambio, referente al señor Santiago y a la corporación CGY, realizó las siguientes determinaciones:

[...] 9. La PNC es soltera, tiene 2 hijos (caso 0550742) además de la alimentista e informó en la PIPE de 27 de diciembre de 2022 estar desempleado, vivir con su madre y padrastro y tener ingresos por ayuda económica de familiares. Declaró en la vista que se dedicó previamente a la venta de alarmas y otros productos Alpha One, fue consultor de Pura Energía y que está desempleado desde el 2017.

10. La PNC incorporó el 25 de enero de 2020 la empresa sin fines de lucro CGY, Corp. (en adelante corporación) y fue su presidente desde esa fecha hasta el 2 de diciembre de 2021, fecha en que renunció a la presidencia. Durante su presidencia la corporación no tuvo oficiales (secretaria(o), tesorera(o), empleados(as), bienes inmuebles ni oficina o equipos.

11. La corporación se dedica a orientar sobre sistemas de generación de energía con placas solares y referir posibles clientes a empresas que ofrecen estos productos.

12. La PNC, durante el periodo de su presidencia, era la persona que buscaba clientes, recibía referidos y refería a

compañías. Declaró que no recibía remuneración por estas gestiones.

13. La corporación tuvo ingresos por los referidos que hizo a Alpha Solar Solutions y Solar Team Management en el 2020 de $90,969.22 y en el 2021 de $81,336.76.

14. En el periodo que la PNC fue presidente de la corporación no se informaron en las planillas de contribución sobre ingresos corporativas pagos por servicios profesionales o comisiones.

15. La PNC tuvo el control financiero total y absoluto de la corporación durante el periodo de su presidencia y hasta el 22 de diciembre de 2021, fecha en que se registró el cambio en la cuenta bancaria corporativa.

16. Durante su presidencia el número de teléfono, la dirección postal y la dirección electrónica de la corporación eran las mismas que las de la PNC.

17. La PNC era la única persona que firmaba los cheques de la corporación, buscaba clientes, recibía referidos y refería posibles clientes a Alpha Solar y Solar Team. En el 2021[,] él, como presidente y único miembro de la junta directiva, aprobó la compra de un vehículo de motor para la corporación.

18. La PNC recibió de la corporación $17,000 entre enero de 2022 y mayo de 2022; $2,000 por pago de comisiones y la diferencia en calidad de préstamo sin intereses ni fecha cierta de pago.

19. La PNC no está incapacitada para ejercer un trabajo remunerado. [...].

Cónsono con los anterior, concluyó que era inverosímil concluir que el señor Santiago no se benefició de los ingresos de CGY.

A su vez, procedió a computar el ingreso neto mensual del señor Santiago en $3,139.90, tomando en cuenta lo recibido por este entre enero y mayo de 2022. Por otra parte, computó el de la señora Rivera en $2,112.78, según informado en la Hoja de Cómputos de 8 de septiembre de 2021.

Como corolario de los anterior, declaró Ha Lugar la solicitud de modificación de pensión alimentaria previo al prorrateo y le ordenó al señor Santiago: (1) el pago de una pensión alimentaria mensual de $825.76, efectiva a 17 de mayo de 2022; y (2) el pago mensual de $54.50 adicional a la pensión alimentaria por 36 meses para cubrir el

60% del tratamiento de ortodoncia de la menor, comenzando en septiembre de 2023.

Inconforme, el señor Santiago presentó el 31 de agosto de 2023 una *Moción de Reconsideración.* El término para que el foro administrativo atendiera la reconsideración transcurrió sin que el recurso fuera atendido.

El 6 de octubre de 2023, el señor Santiago presentó ante el Tribunal de Apelaciones un *Recurso de Revisión Judicial Administrativa* solicitando que se revise la Resolución emitida por ASUME. Realizó los siguientes señalamientos de errores:

**Erró la Juez Administrativa al concederle oportunidad adicional a la P.C. de solicitar una modificación de la Orden de Pensión Alimentaria del 8 de septiembre de 2021, a pesar de que el 11 de julio de 2022 emite Orden donde luego de atender la Solicitud de Modificación solicitada por la P.C. previo al prorrateo, determina que evaluado los testimonios y fotografías presentadas como prueba por la PC, las mismas no eran pertinentes por ser anteriores al 8 de septiembre de 2021, fecha en que se adjudicó la Orden de Pensión.**

**Erró la Juez Administrativa al conceder un descubrimiento de prueba sobre CGY Corp, quien[,] al momento de la orden administrativa, no era parte del caso y por tanto el Tribunal no tenía jurisdicción sobre dicha entidad jurídica.**

**Erró la Juez Administrativa al ordenar un descubrimiento de prueba, sobre entidad jurídica quien no es parte del pleito y sin que la P.C. hubiera demostrado su pertinencia en la vista del 11 de julio de 2022 y los cambios sustanciales en ingreso del P.N.C.**

**Erró la Juez Administrativa sobre la imputación de ingresos que realizó [l]a P.C., por la cantidad de $2,112.78; cuando los gastos reportados en su PIPE asciende[n] a $2,727.00 y donde no se tomó en consideración los depósitos bancarios de la cuenta #086-257722.**

**Erró la Juez Administrativa al imputarle ingresos al P.N.C. de los estados bancarios de la Corporación CGY Corp, que no fueron admitidos en evidencia siendo ésta una persona jurídica independiente del cual el Tribunal de ASUME no tenía jurisdicción.**

**Erró la Juez Administrativa al abusar de su discreción al ordenar descubrir prueba sobre información económica de una Corporación que no es parte del pleito.**

El 16 de noviembre de 2023, la señora Rivera presentó una *Moción Solicitando Desestimación en Virtud de la Regla 83(1) del Reglamento del Tribunal de Apelaciones*. Argumentó que el Tribunal de Apelaciones carece de jurisdicción porque la *Moción de Reconsideración* presentada por el señor Santiago ante ASUME no fue perfeccionada dentro del término de veinte (20) días, ya que omitieron someter los anejos.

Mediante *Resolución* emitida el 31 de enero de 2024, declaramos No Ha Lugar la solicitud de desestimación y se le concedió a la parte recurrida un término para presentar su alegato en oposición.

Ante una solicitud de prórroga presentada por la recurrida, le concedimos, mediante *Resolución* de 8 de febrero de 2024, una prórroga final de diez (10) días para expresarse.

El 22 de febrero de 2024, la señora Rivera presentó su oposición a la revisión judicial.

Examinado el expediente ante nuestra consideración y la posición de las partes, procedemos a resolver.

**II.**

**A. La revisión judicial y la doctrina de la deferencia judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* 211 DPR 99 (2023). Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra.* Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas, supra.*

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**B. Apreciación de la prueba**

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los hechos a la prueba presentada, lo cual incluye, ver el comportamiento del testigo y escuchar su voz, mientras ofrece su testimonio. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión,

prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.*, 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd.*

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra. Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd.*

Ahora bien, cabe destacar que, en ausencia de evidencia oral, el Tribunal de Apelaciones carece de los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó el foro primario. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez,* 204 DPR 117, 146-147 (2020). Lo anterior, en reconocimiento a la oportunidad que tiene el foro primario de ver y observar a los testigos declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones con el efecto de ir formando gradualmente, en su conciencia, la convicción sobre si dicen o no la verdad. *Íd.*, págs. 857-858.

**III.**

En el caso de marras, la determinación final de la agencia le impuso al recurrente la modificación del pago de una pensión alimentaria, calculada a base de los ingresos recibidos por este. El recurrente, a través de sus seis señalamientos de errores, en esencia, pretende cuestionar principalmente un asunto, a saber, la apreciación de la prueba realizada con el fin de auscultar la realidad financiera de las partes.

Debemos recordar que, los foros apelativos debemos deferencia a las determinaciones alcanzadas por los foros primarios, puesto que fue ante estos que testificaron las personas bajo juramento, ocasión que los puso en posición de auscultar gestos, expresiones, oír cambios de tonos, y ejercer la delicada función de adjudicar veracidad. A menos que se demuestre que el foro primario actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto, no estamos en posición de intervenir con la apreciación de la prueba.

Asimismo, cabe mencionar que, la presunción de legalidad y corrección de las decisiones de las agencias administrativas prevalece siempre que la parte que la impugne no demuestre evidencia suficiente que la rebata. De no existir alguna de las situaciones previamente contempladas, estamos obligados a validar la determinación del foro administrativo aun cuando exista más de una interpretación posible en cuanto a los hechos.

En el caso ante nuestra consideración, se celebraron múltiples vistas en las cuales testificaron tanto las partes, como la Presidenta de la corporación CGY. Sin embargo, no se presentó medio de transcripción oral alguno, ello a pesar de que los errores señalados por el recurrente tratan precisamente sobre el valor probatorio que el foro administrativo le concedió al testimonio de las partes y la testigo, previo a permitir la revisión de la pensión alimentaria, ordenar el descubrimiento de prueba, computar los ingresos de las partes e

imponer la pensión. Consecuentemente, las partes no nos pusieron en posición de determinar si se cometieron los errores señalados.

Por lo anterior, como foro revisor estamos impedidos de intervenir con la apreciación de la prueba y mostraremos deferencia a las determinaciones realizadas por el foro administrativo.

**IV.**

Por los fundamentos expuestos anteriormente, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones